[No. 583.    August 29, 1894.]

# TERRITORY OF NEW MEXICO, APPELLEE, v. YEE DAN, APPELLANT.

CRIMINAL LAW—HOMICIDE—MURDER—CONTINUANCE.—The refusal of a continuance in a criminal case, as in a civil case, is a matter resting in the sound discretion of the trial court, and will not be interfered with, where the record discloses no abuse of such discretion.

ID.—INTERPRETATION OF TESTIMONY OF WITNESSES—NEW TRIAL—EVIDENCE.—A new trial will not be granted, in such case, on the ground of an alleged incompetency of the interpreter in interpreting the testimony of the witnesses from the Chinese to the English language, where the motion does not set out the language of the witnesses, and the language used by the interpreter, and there is nothing to show that the testimony of the witnesses was not fairly presented to the jury.  Territory v. Hicks, 6 N. M. 603.

ID.—MURDER—CAUSE OF DEATH—SURGICAL OPERATION.—In such case, where one is severely wounded by blows received upon the head, and a surgical operation, apparently necessary, is resorted to for the purpose of saving him from the probable fatal effect of the wound, and death ensues, to relieve the defendant from responsibility for the death, it must clearly appear that maltreatment of the wound, and not the wound itself, was the sole cause of death.

APPEAL from a judgment of the Third Judicial District Court, Grant County, convicting defendant of murder in the second degree.  Judgment affirmed.

The facts are stated in the opinion of the court.

T. F. CONWAY for appellant.

Where an operation is performed such as an ordinary, prudent, and skillful physician deems necessary, and it is performed with ordinary skill, the one inflicting the wound is responsible, although the operation caused the death; but otherwise, if the operation was not necessary, or if it was not performed with ordinary skill, or from grossly erroneous surgical or medical

treatment. Desty's Crim. Law, sec. 124f. See, also, Coffman v. Commonwealth, 10 Bush (Ky.), 495; 1 Am. Crim. Rep. 293; Commonwealth v. McPike, 3 Cush. 181; Parsons v. State, 21 Ala. 300; Reg v. Connor, 2 Car. & K. 518; Reg v. Holland, 2 Moody & R. 351; State v. Haulister, 42 Am. Rep. 5; State v. Bantly, 26 Id. 486; State v. Morphy, 11 Id. 122, and note 125.

The true distinction in all such cases is: that if the death was evidently occasioned by grossly erroneous medical treatment, the original author of the violence will not be answerable, but if it arises from the want merely of the higher skill, which can be commanded only in great towns, he will be responsible because he has willfully exposed the deceased to a risk from which he had practically no means of escape. 2 Taylor's Med. Juris., p. 597.

Again, according to Lord HALE, "If death takes place from an unskillful operation performed, for the care of a wound, and not from the wound, the responsibility of the prisoner ceases." 2 Taylor's Med. Juris., p. 603.

EDWARD L. BARTLETT, solicitor general, for the territory.

The instructions of the court numbers 16 and 17 were properly given, and the instruction asked for by defendant was properly refused, being substantially the same as those given. Territory v. Baker, 4 N. M. (Gil.) 273; Territory v. Anderson, 4 N. M. (Gil.) 222; Faulkner v. Territory, 6 N. M. 465; Territory v. Trujillo, 7 N. M. 53; Pinkerton v. Ledoux, 3 N. M. (Gil.) 410.

This court has repeatedly held that the overruling of a motion for a continuance rests in the sound discretion of the trial court, and that unless the record discloses such an abuse of discretion as will justify it

in disturbing the judgment on that ground, the court will not interfere. Thomas v. McCormick, 1 N. M. 371; Territory v. Kelly, 2 N. M. 301; Faulkner v. Territory, 6 N. M. 477; T., S. F. & N. R. R. v. Saxton, 7 N. M. 304; 1 Bish. Crim. Proc., sec. 951, and cases cited.

The assignment of error because of the incompetency of the interpreter from the Chinese to the English language was passed upon by this court at its session of 1892. See Territory v. Hicks, 6 N. M. 603.

Where there is evidence (in a murder case), although conflicting, to support the conviction, the evidence will not be weighed on appeal. Territory v. Hicks, 6 N. M. 609; Territory v. Trujillo, 7 N. M. 47; Territory v. Maxwell, 2 N. M. 250.

"If the death ensues from the wound given in malice, but not in its nature mortal, but which being neglected or mismanaged, the party died, this will not excuse the prisoner who gave it, but he will be held guilty of the murder, unless he can make it clearly and certainly appear that the maltreatment of the wound, or the medicine administered to the patient, or his own misconduct, and not the wound itself, was the sole cause of his death." 3 Greenlf. Ev. [8 Ed.], sec. 139; 2 Rosc. Crim. Ev. [8 Am. Ed.], p. 757; 1 Russell on Crimes [5 Ed.], pp. 504, 505; 2 Bish. Crim. Law, secs. 638, 639; Com. v. Hacket, 2 Allen (Mass.), 140–142. In addition to these authorities the cases cited by appellant sustain the view of the law taken by the trial judge, and the contention of the territory.

The testimony of disagreeing doctors is to be received with great caution. Whart. Crim., Ev., sec. 420; People v. Kemler, 119 N. Y. 580, 583, 584.

COLLIER, J.—The appellant, Yee Dan, was at the April, 1893, term of the district court for Grant county, indicted for the murder of Yee Yot Woh, to which

indictment the plea of not guilty was interposed. The case, being continued, came on for trial at the November, 1893, term of said district court. The testimony on the trial showed that in March, 1893, the defendant in the morning, about 7 or 8 o'clock, went to the store where deceased was living, the living quarters being rooms in the rear of the building; that he went to the room where deceased was lying in bed, and struck him on the head with an iron rod; that it does not appear whether he carried the rod with him or not; that the first intimation had by the witnesses, who were living in the same house, and present at the time, of any intended violence on the part of the defendant, was their hearing deceased cry out; that after three or four blows had been given the rod was wrested from the defendant; that after deceased had risen from the bed he fell upon the floor; that he was covered with blood from the blows which had been inflicted; that he was placed in bed; that the defendant said after the striking that he hit the deceased because he had been slandering him; that the deceased died early the next morning. It was also shown that before defendant came to the house he told one of the witnesses that he was going "to lick Yee Yot Woh." Defendant said that he went to the house where deceased was, and that deceased attacked him with a club or broomstick, which he took away from deceased, and used in striking him. Defense also introduced testimony for the purpose of showing that after deceased had been carried to the hospital a surgical operation (trepanning) was so performed upon the skull of deceased as to be the proximate cause of death; that, as explanation for the unlooked-for result, it was shown that the skull of the deceased was abnormally thin, so as to deceive the physician who performed the operation, and cause the instrument to suddenly penetrate the brain. Two physicians made an autopsy of the remains. One testified as follows:

"Q. In the condition that you found this operation had been performed, what, in your opinion, would have been the effect on the subject? A. Well, it settled all his chances for life. It was an exceedingly grave injury. In addition to the one received by the blow, it put beyond all hope any recovery." On cross-examination this physician said: "Q. But in this instance you found the blood clot unusually large? A. Yes, sir. Q. And very compressed? A. Yes, sir. Q. And would that have caused death? A. Undoubtedly the hemorrhage was the proximate cause of death; the blow, the remote cause. Q. Even under the care of a more skillful physician, an injury to the brain might probably cause death? A. Yes, sir: it is a very grave injury." The other physician testified to very nearly the same effect, except that he differed with the former as to the size of the blood clot, and thought there was a possibility of its being absorbed, but for the operation of trepanning. A verdict was returned of murder in the second degree. Motion for new trial was made and overruled, and the case is here on seven assignments of error.

The first alleged error relates to the refusal by the court to give an instruction asked. We have compared the instruction requested with the portion of the court's own instructions relating to the same matter; and think that what the court gave was not only the better instruction, but that it was even more favorable to the accused than the one asked.

The second alleged error is as to the overruling of the motion for continuance. This has been held to be MURDER: continuance. resting in the sound discretion of the court, not to be interfered with unless the record discloses an abuse of such discretion. There appears no semblance of abuse of that discretion in this case.

The third error alleged here relates to the alleged incompetency of the interpreter, who, it seems, inter-

preted from the Chinese into the English language.

INTERPRETATION of testimony of witnesses: new trial.

While the testimony displays to some extent the phraseology used by Chinese in the use of the English language, there is nothing to indicate that the testimony of the witnesses was not fairly presented to the jury, and we reaffirm the ruling made by this court on this subject in the case of Hicks v. Territory, 6 N. M. 603.

The fourth alleged error, that the verdict is against the law and the evidence, and not warranted by the

MURDER: cause of death: surgical operation.

evidence, is urged here mainly upon the theory that the surgical operation of trepanning, and not the blows given by the defendant on the head of the deceased, was the probable and proximate cause of the death. This appears, from all of the authorities to which our attention has been called, to be a question of fact for the jury, under proper instructions. The instructions in this regard, as we have indicated, were even more favorable to the accused than asked; the court telling them that "the prosecution must show, not that such injury was probably the cause of the death, but that it was the efficient and immediate cause of death, and the evidence must establish this fact beyond a reasonable doubt." We think the court might have omitted the word "immediate," in its instructions, and yet have been fully within the principle deduced from the greater weight of authority on this subject. Thus it was held in Com. v. McPike, 3 Cush. 181, "that although the event proved such surgical operation to be ineffectual in giving relief, and it was the immediate cause of the death of the party, yet the defendant is responsible for her death if he had previously given her a mortal blow, in the attempt to save her from the effects of which a surgical operation, apparently necessary, was resorted to." The true test, we think, is that when a surgical operation, apparently necessary, is resorted to

for the purpose of saving one from the probably fatal effect of a wound, it must clearly appear that maltreatment of the wound, and not the wound itself, was the sole cause of the death. It is to be observed that in State v. Morphy, 11 Am. Rep. 122, the Iowa supreme court went further even than this. Any less stringent rule than the one stated, it seems to us, would be in conflict with the authorities, and as aiding criminals to escape merely because of efforts rendered necessary by the defendant's wrongful act to save the victim from its consequences. Rosc. Crim. Ev. [8 Am. Ed.] 757; Russ. Crimes [5 Am. Ed.] 504, 505.

This cause was submitted to the jury fairly, and we find no error in the record. For these reasons it is ordered that the judgment of the court appealed from be, and is hereby, affirmed.

SMITH, C. J., and FREEMAN and LAUGHLIN, JJ., concur.